UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SUSAN SCHAEFER-LaROSE, on behalf of        )
herself and others similarly situated,       )
            Plaintiffs,        )
                          )
        vs.        )        1:07-cv-1133- SEB-TAB
                          )
ELI LILLY & COMPANY,        )
            Defendant.        )

## ORDER ON DISCOVERY MOTIONS

**I.      Introduction.**

      This matter is before the Court on Defendant's motion for protective order [Docket No. 236], Plaintiffs' motion to compel [Docket No. 346], and Plaintiffs' motion for enlargement of discovery period [Docket No. 555]. The motion for protective order and motion to compel both pertain to several notices of depositions served by Plaintiffs on Defendant pursuant to Federal Rule of Civil Procedure 30(b)(6). For the reasons set forth below, Defendant's motion for protective order [Docket No. 236] is granted in part and denied in part, Plaintiffs' motion to compel [Docket No. 346] is granted in part and denied in part, and Plaintiffs' motion for enlargement of discovery period [Docket No. 555] is granted.

**II.     Background.**

      This rather convoluted Fair Labor Standards Act ("FLSA") case was filed November 14, 2006, in the United States District Court for the Northern District of New York and was transferred to the Southern District of Indiana on September 7, 2007. [Docket Nos. 1, 2.] In this

class action,[1] Plaintiffs, who are sales representatives for Defendant, allege that they worked in excess of forty hours per week without being paid overtime compensation in violation of the FLSA and New York law.  [Docket No. 2-2.]  Defendant contends that these employees are exempt from the overtime requirement.  [Docket No. 107.]

On March 12, 2007, the parties submitted a Case Management Plan to the Northern District of New York, which, among other things, provided that the parties "do not propose to conduct discovery in phases, although it is anticipated that substantial discovery will be completed prior to the briefing on any motion to proceed as a collective action or class action." [Docket No. 239, Ex. 2 at 4.]  Pursuant to N.D.N.Y Local Rule 16.1(c)-(e), rather than approving the proposed CMP, the court entered a uniform pretrial scheduling order.  [*See* Docket No. 348, Ex. S.]  This order says nothing regarding whether discovery should be done in phases.  [*Id*. at ¶ 6.]  Upon transfer, this Court approved a CMP on November 7, 2007, [Docket No. 52], which states, "Any party who believes that bifurcation of discovery and/or trial is appropriate with respect to any issue or claim shall notify the Court as soon as practicable."  [Docket No. 49 at 4.] It also set the deadline for discovery at April 1, 2008.  [*Id*. at 5.]

The United States District Court for the Central District of California has also had its hand in this case.  William Putnam, one of the Plaintiffs in this case, initially filed suit against Defendant pursuant to California law in California state court, which Defendant removed to the Central District of California.  Putnam ultimately decided to opt into this class action instead of continuing the suit in California.

---

[1] The Court granted Plaintiffs' motion for conditional class collective action certification and notification on February 22, 2008.  [Docket No. 105.]

2

Prior to opting into this case, Putnam served a 30(b)(6) notice on Defendant in July of 2007, which he amended and re-served on August 15, 2007, that sought deposition testimony on eighteen topics.  [Docket No. 239, Ex. 3.]  Plaintiff Susan Shaefer-LaRose served a 30(b)(6) notice on Defendant on July 20 and August 24, 2007, that sought testimony on six topics. [Docket No. 239, Ex. 4.]  On July 25, 2007, defense counsel emailed an attorney for Shaefer-LaRose and requested that some of the depositions requested in *Putnam* be overlapped with the deposition testimony in *Shaefer-LaRose*, given the overlap of issues and that counsel in the two cases were nearly identical.  [Docket No. 348, Ex. K.]  The attorney for Shaefer-LaRose responded that the 30(b)(6) deposition testimony they were requesting would not take long because it was only for the purpose of class certification.  [*Id.*]  She also explained that depositions in the two cases could not be combined because requirements for class certification were different under California law than under the FLSA.  [*Id.*]

On July 30, 2007, Defendant sent Plaintiffs' counsel a letter in response to Putnam's 30(b)(6) notices, in which Defendant agreed to conduct depositions in Indianapolis but "subject to and without waiving" several objections.  [Docket No. 348, Ex. B.]  One objection Defendant made as to several requests was that Plaintiffs sought "information that is not necessary to the Court's ruling on class certification."  [*Id.*]  Defendant also emailed counsel in the Shaefer-LaRose case on August 3, 2007, indicating that the parties would not be able to agree on all matters related to the 30(b)(6) deposition testimony because of Plaintiffs' unwillingness "to agree that any subjects covered in the 30(b)(6) deposition in Putnam [would] address subjects on the Schaefer-LaRose deposition."  [Docket No. 348, Ex. L.]

In mid to late August, Putnam took depositions of the following:

#        **Andrew Faulkner**. Director, Training and Leadership Development. Deposed August 20, 2007, regarding training of Lilly sales representatives.

#        **Robert Elloreaga**. District Manager. Deposed August 20, 2007, regarding duties of Lilly sales representatives working on the "institution" side of the Neuroscience division.

#        **Robert Campbell**. Manager, Neuro Faculty Development. Deposed August 21, 2007, regarding speaker programs in the Neuroscience division.

#        **Laura Bickle**. Director, Global Compensation and Benefits. Deposed August 21, 2007, regarding salaries and other non-incentive based compensation of sales representatives.

#        **Jade Kas**. Manager, Human Resources. Deposed August 21, 2007, regarding Lilly Human Resources Policies as applicable to Lilly sales representatives working in the Neuroscience sales division.

#        **James J. Pumper**. Manager of Incentive Compensation. Deposed August 21, 2007, regarding incentive compensation for Lilly sales representatives.

#        **Ronald Kijowlski**. District Manager. Deposed August 28, 2007, regarding duties for sales representatives working in Lilly's Oncology Division.

#        **Richard C. Morris**. District Manager. Deposed August 29, 2007, regarding the duties of sales representatives working on the "office" side of Lilly's Neuroscience division (organization in which Plaintiff Schaefer-LaRose worked).

#        **Todd Hustel**. District Manager. Deposed August 31, 2007, regarding the duties of sales representatives working in Lilly's Diabetes sales division.

[Docket No. 238 at 4-5; Docket No. 347 at 4.]   At around the time these depositions were taken, Defendant specifically clarified to Plaintiffs that Robert Elorreaga, Ronald Kijowski, Richard Morris, and Todd Hustel were only designated to testify as to their respective sales divisions. [Docket No. 348, Exs. F, G.]  In late August the following depositions were taken for purposes of both cases:

4

> **#**    **Kelly Freeman**. Director of Ethics and Compliance. Deposed August 29, 2007, regarding compliance.
>
> **#**    **Beth Sexton**. Analytics and Sales Force Capabilities Director. Deposed August 30, 2007, regarding the structure of Lilly's sales organization.

[Docket No. 238 at 5; Docket No. 347 at 7.]  Based on email correspondence on August 24, 2007, Plaintiffs' counsel agreed to cross-notice Ronald Kijowski, Richard Morris, and Todd Hustel.  [*See* Docket No. 239, Ex. 5 at 2-3.]

On August 13, 2007, Plaintiffs filed a motion to conditionally certify this action as FLSA collective action.  [Docket No. 2-73.]  On December 17, 2008, while Plaintiffs' motion was pending, Defendant filed a motion for summary judgment as to Plaintiff Susan Schaefer-LaRose.  [Docket No. 68.]  At the January 23, 3008, pretrial conference, the Court stayed briefing of the summary judgment motion until the completion of the class certification process.  [Docket No. 106 at 2.]  In deciding to stay the briefing on the motion for summary judgment, the Court noted that "[w]hile all discovery to date likely has not been focused exclusively on class issues (there have been 14 depositions already), it seems a fair conclusion that class issues have been the primary thrust of this discovery" and that "Plaintiffs represented to the Court that additional discovery is needed to respond to the pending summary judgment motion, including Rule 30(b)(6) depositions."  [*Id.*]  On February 22, 2008, the Court granted Plaintiffs' request to conditionally certify this action and ordered Defendant to produce to Plaintiffs' contact information for all "Covered Employees."  [Docket No. 105.]

The Court again held a pretrial conference on March 12, 2008, in which discovery, settlement, and related matters were discussed.  [Docket No. 111.]  On April 4, 2008, all existing dates to the CMP were adjusted by four and one-half months.  [Docket No. 116.]  On April 7,

2008, the Court held a telephonic status conference, in which the Court ordered that, "[d]iscovery on the merits of this action shall commence immediately," [Docket No. 119 at 2], providing Plaintiffs with sixty days to complete the discovery necessary to address the summary judgment motion, and then an additional thirty days to respond to the motion. [*Id.*]

Plaintiffs served Defendant with a great deal of discovery requests during the month following the telephonic conference, including the contested 30(b)(6) notice served by Plaintiffs on May 1, 2008, which requested deposition testimony on forty-eight different topics. [Docket No. 239, Ex. 10.] Defendant responded to the notice on May 9, 2008, in which it objected to providing witnesses for all but four of the topics. [Docket No. 239, Ex. 11.] The parties ultimately resolved many of their differences, but remaining issues prompted Defendant to file a motion for protective order [Docket No. 236] and Plaintiffs to file a motion to compel and for extension of time. [Docket No. 346.] These issues pertain to Plaintiffs' Request Nos. 3, 14, 15, 17, 26, 42, 46, and 47, the contents of which are set forth below.

## III.   Discussion.

Defendant argues for its motion for protective order and against Plaintiffs' motion to compel on the basis that the information Plaintiffs seek is "irrelevant, unreasonably duplicative, and unduly burdensome." [Docket No. 400 at 3; *accord* Docket No. 238 at 2.] Plaintiffs' general position is that Defendant "is stonewalling its discovery obligations by refusing to produce testimony relevant to the issues in its motion for summary judgment." [Docket No. 347 at 1.]

6

## A.    Preliminary Issues

The parties disagree on a couple issues relevant to multiple requests.  First, Defendant argues that the scope of discovery should be limited to the duties of the pharmaceutical sales representatives.  Defendant cites several cases in support of this proposition.  *See Barnick v. Wyeth*, 522 F. Supp. 2d 1257, 1265 n.6 (C.D. Cal. 2007) (explaining that it need not consider the sur-reply filed by the plaintiff that emphasized the diminished role of sales representatives in prescription choices as this information is irrelevant because "the inquiry under the outside salesperson exemption is what the objectives and duties of the employee in question are"); *Nielsen v. Devry Inc.*, 302 F. Supp. 2d 747, 756 (W.D. Mich. 2003) (granting the employer's motion for summary judgment because the plaintiffs fell under the sales exemption, and in so doing, determining that the relevant inquiry was the job duties that the plaintiffs actually performed); *Fields v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 971, 975 (W.D. Tenn. 2003) (determining that while a company's designation of a job description as non-exempt may be evidence of the position's status, "the actual job duties and actions performed by the employee are dispositive").  Defendant also cites an Order Affirming Magistrate's Order Denying Plaintiffs' Motion to Compel Testimony in the case *Delgado v. Ortho-McNeil, Inc.*, SACV07-002630CJC(MLGx) (C.D. Cal. May 27, 2008), in which the district court determined it was proper to deny the plaintiffs' motion to compel deposition testimony on the defendants' distribution process for its pharmaceutical products, concluding that "discovery on the issue of whether Plaintiffs were misclassified as exempt generally should be limited to information relating to the 'actual work performed' by pharmaceutical sales representatives . . . not on the duties of employees within the Trade Relations department."

*Barnick*, *Nielsen*, and *Fields* propose that in determining whether the outside sales exemption applies to Plaintiffs, the relevant determination is what duties Plaintiffs performed. However, the issue currently before this Court is not the disposition of the outside sales exemption issue but the scope of discovery on the merits of this entire case.

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense" and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Rule 26(b)(1); *accord Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004).  A court may limit discovery if: "(1) [the discovery is] unreasonably cumulative or duplicative; (2) [the discovery is] obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit."  *Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002); *see also* Fed. R. Civ. P. 26(b)(2).  But the party opposing discovery has the burden of showing, with specificity, that the discovery is overly broad, unduly burdensome, or irrelevant. *Graham v. Casey's Gen. Stores, Inc.*, 206 F.R.D. 251, 254 (S.D. Ind. 2002).

Defendant fails to meet the burden it bears to demonstrate that discovery should be limited to only inquiries regarding the job duties of sales representatives.  The scope may not be as broad as Plaintiffs propose, but the rationale contained in *Delgado* fails to address the breadth of discovery required by the Federal Rules of Civil Procedure necessary to sufficiently cover the merits of the claims and defenses in the case at bar.  Defendant's motion for summary judgment, which raises not only the sales representative exception as a defense but also the highly compensated exemption, the administrative exemption, and the motor carrier exemption,

8

undoubtedly entails broader discovery than Defendant suggests is relevant.  [Docket No. 69 at 2.]  In conclusion, the Court rejects Defendant's attempt to limit discovery to the duties of pharmaceutical sales representatives, though as discussed below, discovery will not be permitted as broadly as Plaintiffs propose.

The second broad issue raised by the parties is whether the notices for deposition issued by Plaintiffs on May 1, 2008, duplicate earlier depositions taken in this litigation and in *Putnam*. Plaintiffs argue that the recent notices for deposition are not duplicative of previous depositions for two reasons: (1) the depositions taken in *Putnam* were tailored for California law rather than the FLSA; and (2) the depositions taken in both *Putnam* and the case at bar were for purposes of class certification and not on the merits.  Therefore, Plaintiffs argue that Rule 30(a)(2)(A)(ii), which requires a party to obtain leave before deposing someone who has already been deposed in the case, does not apply.

While not explicit, in general both parties seem to assume to some extent that in addressing Rule 30(a)(2)(A)(ii) in this discovery dispute, the question is whether the deposition notice is for the same topic (rather than necessarily the same person) as previously asked.  This Court has been proceeding under the reasonable belief that the majority of discovery prior to May of this year has been focused on class certification, but that class certification issues overlap somewhat with discovery on the merits.  This belief is supported by correspondence between the parties attached as exhibits to the discovery motions addressed here as well as the lack of bifurcation of discovery in this litigation.  Thus, rather than making a general determination either way on this issue, the more appropriate course of action is to compare the topics on which previous depositions were taken with depositions Plaintiffs now seek to take.  Included in the

9

comparison is the likely scope of information obtained by Plaintiffs based on statutory variances between this case and *Putnam*, whether or which depositions in *Putnam* should be attributed to this case, and any limitations imposed by Defendant as to the applicability of the information from prior depositions based on geography or department.

      **B.**      **Request No. 3: "The person most knowledgeable about Lilly's understanding of what constitutes a 'sale' of Lilly's products."**

Defendant argues that this request "improperly seeks legal conclusions about what constitutes a 'sale' of Lilly's products." [Docket No. 400 at 21.] It further argues that Plaintiffs already deposed witnesses regarding the duties of sales representatives, sales training, the structure of sales organizations, and incentive compensation for sales efforts.

Plaintiffs argue they only seek facts, not legal conclusions, for Request No. 3. They contend that the deposition testimony to which Defendant refers that has already been provided was focused on class certification rather than on the merits of the case and was provided in *Putnam*, not this case, and that the topics of those depositions are not the same as what they now seek. Finally, Plaintiffs argue that this particular request for deposition testimony is relevant to the affirmative defense Defendant raised based on the outside salesperson exemption of the FLSA, which focuses on "making sales" and the definition of "sales."

As to whether this request is for a legal conclusion or for facts, Plaintiffs have clarified that they only seek the facts on this issue. While the term "sale" has different legal definitions, the term can also be defined by a company for internal purposes in such a way as is different from any legal definition of the word, and it seems that this is the information Plaintiffs seek. This information is relevant so that Plaintiffs might compare the definition used by Defendant for internal purposes with the relevant legal definition to determine whether Plaintiffs play a role

in "sales" as defined by the statute.  Regardless of whether the prior deposition testimony was

on class certification versus merits and whether it was taken in another case, the topic of how

Defendant defines a sale is not obviously encompassed within the duties of sales representatives,

sales training, the structure of sales organizations, or incentive compensation for sales efforts,

and Defendant has not otherwise demonstrated that Request No. 3 was specifically addressed

within one of these categories.  Because Plaintiffs have not yet deposed anyone regarding the

subject matter of Request No. 3, which is relevant to their claim, they are entitled to such

deposition testimony.

     C.    **Request No. 14: "The person most knowledgeable about the differentiation of the market performance for any and/or all Lilly products between the promotion efforts of the Pharmaceutical Reps, mass marketing or Direct to Consumer advertising, and/or any other marketing efforts."**

Defendant argues that this request is irrelevant because it "has nothing to do with the

'actual work performed' by sales representatives."  [Docket No. 238 at 14.]  Defendant also

argues that the marketing information it possesses is voluminous and requires the input of

hundreds of employees, and that it would be unduly burdensome for Defendant to try to appoint

one witness for the assimilation and testimony of such a broad request.  According to a

declaration by Beth R. Sexton, the Director of Analytics and Sales Force Capabilities for

Defendant, it would take at least several weeks to gather and review all the information

necessary to testify on this topic.  [Docket No. 401, Sexton Aff. at ¶ 11.]  Furthermore, the

reports on which the testimony would be based "reflect the success or failure of Lilly's sales

strategies" and therefore "are highly confidential and proprietary."  [*Id*. at  ¶ 7.]

Plaintiffs argue that this request is relevant to determine the level of importance of

Plaintiffs' work for Defendant, which they say is necessary to address the administrative exemption raised by Defendant in its motion for summary judgment, [Docket No. 347 at 23], applicable to employees who "exercise [] discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). Plaintiffs do not address Sexton's affidavit provided by Defendant in support of Defendant's burdensome argument.[2]

"In determining whether a subpoena ought to be enforced, modified or quashed, the district court also must consider the burdensomeness of compliance. . . . Consequently, a court may modify or exclude portions of a subpoena only if the [other party] 'carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad.'" *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002) (quoting *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1982).

Request No. 14 essentially seeks information on the relative importance of the efforts of sales representatives as opposed to other methods of advertisements. Plaintiffs seek this information in order to explore the issues surrounding the administrative exemption Defendant asserts precludes Plaintiffs' claims. It is difficult to ascertain how comparing the relative importance of different marketing styles would prove that one method falls or does not fall under the administrative exception. The relevance seems remote. Furthermore, the uncontested evidence indicates any representative for Defendant who would undertake the responsibility to testify on this topic would need at least several weeks to prepare. This degree of burden is unreasonable given the remote relevance. Accordingly, Defendant need not produce a witness to

---

[2] Plaintiffs filed a motion to strike all the new arguments and evidence submitted by Defendant in its response/reply to Plaintiffs' motion to compel and Defendant's motion for protective order, [Docket No. 474], but the Court denied the motion [Docket No. 526].

testify on this topic.

      **D.**    **Request No. 15: "The person most knowledgeable about ethical or legal restrictions or guidelines regarding whether medical professionals can pre-commit to prescribing Lilly's products."**

Defendant argues that this request is duplicative of one of the topics from Plaintiffs' August 24, 2007, notice, which requested testimony on "Defendant's policies, practices, and guidelines concerning the promotion of pharmaceutical products, including policies, practices, and guidelines for compliance with federal and state laws and regulations, including, but not limited to, those of the Food and Drug Administration."  [Docket No. 239, Ex. 4 at ¶ 6.] Defendant provided Kelly Freeman, Director of Ethics and Compliance, to address this topic. [Docket No. 238 at 11; Docket No. 347 at 7.]  Defendant further argues that Plaintiffs are not entitled to re-depose Freeman simply because they failed to fully question her about this specific topic, which is encompassed within the broader topic on which Freeman was previously deposed.  Plaintiffs argue that these two requests ask for completely different information.  They also argue that the prior deposition was conducted in the *Putnam* case regarding class certification issues under California law.

Defendant's position is more persuasive.  According to Plaintiffs' brief in support of motion to compel, Freeman's deposition was taken not only for the *Putnam* case but also for the case at bar.  [*See* Docket No. 347 at 7.]  Plaintiffs' August 24 notice for deposition sought testimony on guidelines for compliance with federal and state laws regarding promotion of products.  To the extent Defendant is responsible for knowing the restrictions on physicians sought in Request No. 15, this information would fall in the broad category of the August 24 notice.  And Freeman's title—Director of Ethics and Compliance—would make her the obvious

13

choice to testify on the topic of Defendant's knowledge of whether physicians can pre-commit to prescribing drugs.  Thus, Plaintiffs are not entitled to again depose Freeman.

**E.**     **Request Nos. 17 & 47: "The person most knowledgeable about Lilly's distribution of its products, including the relationship between Lilly and drug wholesalers (including wholesale distributors), the identity of wholesalers, which Lilly employees interface with wholesalers, including but not limited to those employees who take orders from, sell to and/or enter into contracts with wholesalers." & "The person most knowledgeable about how and when Lilly recognizes revenue from the sales of its products."**

Defendant argues that these requests are irrelevant, contending that how its products are distributed has no bearing on whether Plaintiffs are exempt from the outside sales exemption. Defendant cites an order on motion for protective order and to compel issued by the District of Connecticut, in which the court concluded:

> To determine whether a pharmaceutical representative's duty of "educating physicians" about defendant's products is promotional work performed incidental to and in conjunction with the representative's own sales, or whether it is incidental to sales made by someone else, requires an examination of the sales work, or lack thereof, completed by the representative plaintiffs and need not extend to the duties of other employees who may or may not make the ultimate sale.

[Docket No. 239, Ex. 22 at 7], *Ruggeri v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 3:06 CV 1985 (D. Conn. Feb. 28, 2008) (citations omitted).  Defendant also argues that it believes this information is largely uncontested and has offered to stipulate to the flow of its products through distribution channels.

Plaintiffs respond that how Defendant distributes its products to buyers "goes to the heart of the dispute of what constitutes a sale of [Defendant's] products."  [Docket No. 347 at 25.] Plaintiffs state that in *Coultrip v. Pfizer, Inc.*, No. 06-Civ-9952 (S.D.N.Y), Pfizer produced four different witnesses pertaining to the topics encompassed in Request Nos. 17 and 47.  Plaintiffs point out that even if this information were not directly relevant, it need not be under Rule 26,

which provides for broad discovery.  Plaintiffs further argue that Defendant's offer to stipulate is insufficient because their requests are not so narrowly defined as the information Defendant has offered to provide.

Plaintiffs' argument is more convincing.  The Federal Rules of Civil Procedure provide for broad discovery, and Defendant's only argument is that Plaintiffs' requests are not relevant to the issues in this case.  Plaintiffs' requests seek to obtain information on all the employees involved in the sales process, as well as how a sale is recognized by Defendant, in order to determine what role Plaintiffs play in the sales process.  The clarity that could be obtained through this comparison may be quite relevant to Plaintiffs' exploration of issues involving the outside sales exemption.  Defendant's offer to stipulate to the distribution process does not fully address these two requests.  The information sought in Request Nos. 17 and 47 is sufficiently relevant, and Defendant has offered no other justification to deny Plaintiffs this information.  Accordingly, Plaintiffs are entitled to depose Defendant on these topics.

   F.    **Request No. 26: "The person most knowledgeable concerning prior litigation, arbitration, or administrative proceedings in which Lilly indicated, including through but not limited to declarations, pleadings, briefs or deposition testimony, that Pharmaceutical Reps do or do not sell products, including any statements that representatives do not consummate sales of pharmaceutical products or do not sell products to medical professionals, patients, pharmacies, or wholesalers."**

Defendant argues that this request is "burdensome in the extreme" because—as was attested to by Angela M. White, Team Leader for Defendant's Litigation Case Management Team—Defendant has been involved in thousands of lawsuits in the last few years across the country, using outside counsel who maintain files on these cases, and there is no central repository for all documents.  [Docket 403, White Decl. at ¶¶ 3, 5.]  Defendant further contends

15

that this request would require Defendant "to comb through every file for every lawsuit and proceeding that has arisen during the period requested."  [Docket No. 400 at 18; Docket 403, White Decl. at ¶¶ 3, 5.]  Defendant argues that this information is irrelevant because the issues involved in any such cases are different.  Defendant notes that the example provided by Plaintiffs of a case in which Defendant purportedly indicated that sales representatives do or do not sell products, *Weathers v. Eli Lilly and Company*, No. 2:06-CV-0666-WHA, demonstrates the lack of relevance such cases would have.  Defendant explains that *Weathers* is a case brought under the Alabama Extended Manufacturer's Liability Doctrine in which Defendant argued that a sales representative would not properly be joined as an individual defendant for purposes of destroying diversity jurisdiction because Defendant was the seller of the pharmaceutical in question.

Plaintiffs argue that Defendant "mischaracterizes the response required by this request" and that "[i]t will not require any burdensome combing of every lawsuit on record," particularly since Plaintiffs agreed to narrow the request to "those proceedings in which Lilly took the position that its sales representatives do not sell, or consummate sales of, Lilly pharmaceutical products."  [Docket No. 347 at 26-27.]  Plaintiffs further argue that this information is relevant because it could include admissions that could be used against Defendant, and that the cases Defendant cites to support its position that this information is not relevant did not apply the discovery rules broadly.  Plaintiffs also point out that Defendant is in the better position to obtain this information.

The testimony Plaintiffs seek is potentially relevant.  However, even assuming the narrowed request Plaintiffs put forward, any relevance of the cases Plaintiffs seek depends

entirely on how the legal terms are defined according to the law governing those cases.  As to the degree of burden it would be for a witness to prepare for this deposition, Defendant provides uncontested evidence that Defendant has been in thousands of lawsuits and other legal proceedings in the past several years.  As a practical matter Defendant would probably not need to "comb" through every detail of every legal proceeding to determine the information Plaintiffs seek.  Nonetheless, in order to adequately address this deposition topic, Defendant would need to at least engage in a nationwide search to identify and examine all litigated matters.  Because the potential relevance of such a sweeping request is remote, and the impact on Defendant would be unduly burdensome, Defendant is not obligated to provide deposition testimony on this topic.

> G.      **Request No. 42: "The person most knowledgeable about any policies, procedures, practices or programs of your Regulatory Affairs department insofar as they concern the job duties, tasks, and responsibilities of Pharmaceutical Reps."**

Defendant argues that this information is irrelevant and duplicative.  Defendant provided a declaration by Michele Sharp, the Manager of U.S. Regulatory Affairs for Defendant, who asserts that "[t]he Regulatory Affairs department does not deal directly with sales representatives or provide them with guidance, input or instructions regarding how they should perform their jobs." [Docket No. 402 at ¶ 2.]  She also said that occasionally representatives would attend meetings for sales representatives "to make sure any information the marketing department provides to sales representatives meets FDA requirements" but not to "present information or provide guidance to sales representatives."  [*Id*. at ¶ 4.]  Defendant also argues that Plaintiffs have had many other opportunities to gather information on how sales representatives actually use promotional materials—given that they have had the opportunity to depose seven district managers and other witnesses—and to this extent the request is duplicative.

Plaintiffs argue that testimony from the Regulatory Affairs department, which reviews the promotional materials used by Defendant, would be relevant in determining whether Plaintiffs "exercise discretion and independent judgment," 29 C.F.R. § 541.202(a), in promoting products to medical professionals.  [Docket No. 399 at 21.]  Plaintiffs also contend that Defendant has failed to show how any potential harm in providing this testimony outweighs the presumption in favor of broad discovery.  [*Id.* at 20.]

Defendant contends that Plaintiffs have had many opportunities to gather information about how sales representatives use promotional materials having had "seven opportunities to depose district managers about sales representatives' duties."  [Docket No. 400 at 25.]  However, only three of the district managers were cross-noticed in this case.  Furthermore, at the time these depositions were taken, Defendant specifically qualified their testimony, limiting them to speak only for their districts.  These districts were presumably in California since they were originally taken in connection with the *Putnam* case.

However, it does not appear that this is the information Plaintiffs seek.  The heart of what Plaintiffs want is information on the extent to which sales representatives have discretion and independent judgment when it comes to what they provide to medical professionals.  Defendant has all but conceded that sales representatives have no discretion and independent judgment on the promotional materials sale representatives provide to medical professionals: "Lilly has never claimed that sales representatives create these promotional materials, much less vet them for regulatory compliance."  [Docket No. 400 at 25.]  To the extent sales representatives are authorized to verbally provide medical professionals with additional or explanatory information on the promotional materials, the uncontested affidavit Defendant provided given by Michele

18

Sharp indicates that the Regulatory Affairs department is in no way involved in such decisions. Because the relevant information Plaintiffs seek is not within the purview of the description of the person they seek to depose, and the request seems otherwise remote to the issues of this litigation, Defendant need not provide a witness to testify as to this topic.

        **H.**    **Request No. 46: "The person most knowledgeable about the policies, practices, or procedures of any brand team or brand department at Lilly insofar as they concern sales calls or presentations made by Pharmaceutical Reps to medical or health care professionals."**

Defendant argues that this request is unduly burdensome because it is "virtually limitless—implicating nearly everything Lilly's approximately fifteen different brand teams have done over just the last few years." [Docket No. 400 at 22-23.] Defendant further argues that Plaintiffs' offer to limit the request to products promoted or detailed by Susan Schaefer-LaRose provides little to no limitations to the request because it would encompass testimony on as many as seventeen brand teams over the past eighteen years. Defendant also argues that this request is duplicative because the topic of how sales representatives use promotional materials has already been explored with four district managers.

Plaintiffs respond that their request is sufficiently specific because they are not asking for testimony on the strategies for each of Defendant's products, but rather the policies and procedures concerning sales calls by sales representatives. Like Request No. 42, Plaintiffs argue this information is relevant to the administrative exemption in determining the extent to which Plaintiffs "exercise discretion and independent judgment with respect to matters of significance." [Docket No. 399 at 21 (quoting 29 C.F.R. § 541.202(a)).] Plaintiffs further contend that Defendant has never made available "merits-related testimony concerning the policies of Lilly's brand department that implicate sales calls made by its sales representatives." [*Id*. at 20-21.]

Plaintiffs have the stronger argument.  This information is relevant and, unlike the Regulatory Affairs department, the brand department strategizes how sales representatives are to promote Defendant's products.  Plaintiffs' request is not for the specific strategies developed by the brand teams, but rather the policies, practices, and procedures of the brand teams as they relate to sales calls or presentations.  It seems this request could be fulfilled such that one person provides general information on the topic, but Defendant indicates through the declaration of Beth Sexton, Director of Analytics and Sales Force Capabilities, that the different brand teams vary enough that this is not possible.  [*See* Docket No. 401 at ¶¶ 2-6.]  To help minimize the burden that Defendant faces with this request, while not entirely depriving Plaintiffs of this information just because Defendant is a large organization, Plaintiffs' Request No. 46 shall be limited to the five years prior to the date Plaintiffs made this request and going forward; so May 1, 2003, through the present.

## I.    Plaintiffs' Motion for Extension of Time.

Plaintiffs request a reasonable extension of time in which to complete the requested discovery.  Subsequent to filing the motion to compel, Plaintiffs also filed a motion for enlargement of discovery period [Docket No. 555] from August 19, 2008, to November 19, 2008, in order to conduct discovery related to those Plaintiffs who have recently opted into this case.  The Court hereby grants Plaintiffs' motion for enlargement of discovery period to November 19, 2008.  Accordingly, Plaintiffs' request for extension of time in their motion to compel (to complete the discovery related to that motion) is moot.

**IV.    Conclusion.**

For the reasons discussed above, Defendant's motion for protective order [Docket No. 236] is granted in part and denied in part and Plaintiffs' motion to compel [Docket No. 346] is granted in part and denied in part.  Plaintiffs are entitled to depose Defendant on Request Nos. 3, 17, 46, and 47.  The deposition testimony for Request No. 46 shall be limited to information pertaining to May 1, 2003, through the present.  Plaintiffs are not entitled to deposition testimony as to Request Nos. 14, 15, 26, and 42.  Furthermore, Plaintiffs' motion to enlarge discovery period [Docket No. 555] is granted.

Dated:    09/11/2008

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

21

Copies to:

Jonathan S. Abady
EMERY, CELLI, BRINCKERHOFF & ABADY LLP
jabady@ecbalaw.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Michael R. DiChiara
JOSEPH & HERZFELD LLP
md@jhllp.com

Gabriel Adam Hawkins
COHEN & MALAD LLP
ghawkins@cohenandmalad.com

Ryan Michael Hurley
BAKER & DANIELS LLP
ryan.hurley@bakerd.com

James A. Jones
GILLESPIE, ROZEN, WATSKY & JONES, P.C.
jaj@grwlawfirm.com

Charles  Joseph
JOSEPH & HERZFELD LLP
charles@jhllp.com

Gregory N. Karasik
SPIRO MOSS BARNESS LLP
greg@spiromoss.com

Eric B. Kingsley
KINGSLEY & KINGLSEY APC
eric@kingsleykingsley.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

James A. O'Brien III
SEEGER WEISS LLP

jobrien@seegerweiss.com

Michael D. Palmer
JOSEPH & HERZFELD LLP
michael@jhllp.com

D. Lucetta Pope
BAKER & DANIELS-SOUTH BEND
lucetta.pope@bakerd.com

Elizabeth  Saylor
EMERY CELLI BRINCKERHOFF & ABADY LLP
esaylor@ecbalaw.com

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, NY 10004-2502

Ira  Spiro
SPIRO MOSS BARNESS LLP
ira@spiromoss.com

Christopher  Van De Kieft
SEEGER WEISS LLP
cvandekieft@seegerweiss.com

David S. Wagner
BAKER & DANIELS, LLP
david.wagner@bakerd.com

Stephen A. Weiss
SEEGER WEISS LLP
sweiss@seegerweiss.com