UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SUSAN SCHAEFER-LaROSE, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | 1:07-cv-1133-SEB-TAB |
| vs. | ) ) | |
| ELI LILLY & COMPANY, | ) ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR LEAVE
TO FILE UNTIMELY CONSENT TO JOIN FORMS
AND MOTION TO STRIKE CERTAIN CONSENTS**

**I.      Introduction**

Plaintiffs move the Court for leave to file untimely Consent to Join forms of six potential opt-in Plaintiffs whose consent forms were post-marked after the July 30, 2008, deadline for mailing consent forms to Plaintiffs' counsel.  [Docket No. 566.]

Defendant moves the Court to strike certain Consent to Join forms which were allegedly untimely and/or filed in violation of the Court's order and rules.  [Docket No. 576.]  The consents challenged by Defendant include the six for which Plaintiffs seek leave to file, ten others filed after August 4, 2008, but not mentioned in the Plaintiffs' motion, and twenty-two others filed by David Rose, an attorney who has never entered an appearance in this case.

The Court's Order Granting Plaintiff's Motion for Conditional Collective Action Certification and Notice of February 22, 2008, gave Covered Employees (defined at ¶ 3 of the Order) 120 days after the date the Notice (defined at ¶ 5 of the Order) is mailed to them to mail

or hand deliver a completed Consent to Join form to Plaintiff's counsel or his agent.  [Docket No. 105 at ¶ 6.]  The Order provided: "Covered Employees who timely mail a completed Consent to Join Form shall be deemed to have joined the conditionally certified collective action" and "[t]imeliness is to be determined by the postmark date in the event of mailing. . . ." ([Id.]  With regard to untimely Consents to Join, the Order stated: "Covered Employees whose Consents to Join are untimely shall be deemed to have joined the action . . . upon agreement by the parties, or upon order of this Court on good cause show[n], provided that Plaintiff's counsel files their Consent to Join Forms with this Court as provided in Paragraph 8 or this Order."  [*Id.* at ¶ 7.] Paragraph 8 said: "Plaintiff's counsel shall file all Consent to Sue forms with this Court. Except for good cause shown, the deadline for Plaintiff's counsel to file Consent to Join forms with this Court shall be the date that is 150 days after the date the Notice is mailed to Covered Employees."  [*Id.* at ¶ 8.]

Following entry of the February 22 Order, Eli Lilly & Company ("Lilly") moved for reconsideration as to the form and scope of the Notice.  Among other arguments, Lilly contended that the 120-day notice period for opting into the action contradicted the parties' agreement and the Case Management Plan, which provided for a 60-day notice period and, in any event, was excessive.  Lilly, however, did not appear to object to the allowance of an additional 30 days within which Plaintiffs' counsel was to file the Consent to Join forms.

After hearing the parties' arguments, the Court granted in part and denied in part Lilly's motion for reconsideration and ordered the parties to cooperate in revising the Notice.  [Docket No. 119 at 1.]  The Court further ordered that:

> **!**   [The] Notice . . . shall be mailed to the potential collective action members no later than <u>April 30, 2008</u>.

!     The potential collective action members shall have through and including <u>July 30, 2008</u>, to mail in and have postmarked their "Consent to Join" forms.

!     The membership of the collective action shall be deemed closed on <u>August 4, 2008</u>.

[*Id.* at 2.]

Notice was mailed to all Covered Employees on April 30, 2008. Plaintiffs' counsel received six Consent to Join forms postmarked after the July 30 deadline from the following individuals with the respective postmark dates: Donald Francis Beaudoin, Jr., September 2, 2008; Richard Thomas Clubine, August 28, 2008; Charles Farrauto, July 31, 2008; Zakir H. Khan, August 9, 2008; Carmen Consuelo Orguiola-Molinos, August 7, 2008; and Netetia K. Walker, August 18, 2008. Plaintiffs' counsel sought Lilly's consent to the filing of these six consents as provided in Paragraph 7 of the February 22 Order. In doing so, they provided Lilly with drafts of the declarations of these individuals, explaining the circumstances surrounding their untimely consents. Three of these individuals asserted that they placed the form in the U.S. mail before the July 30 deadline even though the postmark date was after the deadline.[1] The other three offered explanations as to why they had not mailed the form before the deadline.[2]

---

[1] Farrauto stated that he placed the form in a U.S. postal mail box on July 28 or 29. Orguiola-Molinos said that she placed the form in the mail on July 30. Walker stated that she placed the form in a U.S. postal mail box during the week prior to July 30, that her employer has had similar problems with mail being picked up from the same mail box, and that she has learned the mail box is located in an area the postal service uses as a training route.

[2] Beaudoin explained that he did not mail the form until September 1, 2008, but he had been undergoing grief counseling due to the loss of his sister to cancer and in the summer he began a new job in which he was heavily involved. Clubine said that between July 24 and August 1, 2008, he was out of the country and had forgotten to mail the form before he left; and on his return, he started a large, new project at his job and thus did not mail the form until on or about September 2. Khan said that he was married July 19 and did not return from his European honeymoon until July 29, and he mailed the form on or about August 9.

3

## II.    Discussion

The Court has discretion in determining whether to allow untimely opt-ins to join this action.  *See Moya v. Pilgrim's Pride Corp.*, No. 06-1249, 2006 WL 3486739, at *1 (E. D. Pa. Nov. 30, 2006).  In exercising that discretion, the Court keeps in mind that the Fair Labor Standards Act ("FLSA") should be construed liberally; a broad reading is essential to accomplish its goals.  *Reich v. Great Lakes Indian Fish & Wildlife Comm'n*, 4 F.3d 490, 499 (7th Cir. 1993); *Kelley v. Alamo*, 964 F.2d 747, 750 (8th Cir. 1992) ("A generous reading, in favor of those whom congress intended to benefit from the law, is also appropriate when considering issues of time limits and deadlines.")

### A.    Six Consents That Are the Subject of Plaintiffs' Motion

In seeking leave to file six untimely consents, Plaintiffs argue that all of the consent forms were mailed and postmarked within approximately one month of the July 30 deadline. Indeed, three of the six consents (from Farrauto, Orguiola-Molinos and Walker) were mailed before the July 30 deadline; yet they were postmarked after the deadline.  Were these three consents timely filed?  Perhaps.

The Court presumably set the postmark and filing deadline as a practical matter. Deadlines prompt action by others.  The order that timeliness is to be determined by the postmark date in the event of mailing set a reasonably certain means for determining when a Notice was mailed to Plaintiffs' counsel.  The Court necessarily contemplated some period of time after the July 30 deadline within which a form postmarked on July 30 would make its way to Plaintiffs' counsel.  Delivery by the U.S. Postal Service is hardly instantaneous, and on certain occasions it can take more time than expected.  It would be highly unfair to penalize Farrauto,

Orguiola-Molinos and Walker simple because they fell "prey to the United States Postal

Service's snail mail." *Moya*, 2006 WL 3486739, at *2.

Lilly responds that per the April 7 Order, "membership of the collective action shall be

deemed closed on August 4, 2008," and, thus, the Farrauto, Orguiola-Molinos and Walker

consents were too late. When this language is read together with the preceding language that

allows potential members "through and including July 30, 2008 to mail . . . and have postmarked

their 'Consent to Join' forms," however, the actual meaning of the cited language is unclear.

Lilly reads the April 7 Order as both allowing potential members to mail their consent forms

through July 30, 2008, <u>and</u> requiring Plaintiffs' counsel to file the consent forms (including those

mailed on July 30 (a Wednesday)) no later than August 4, 2008 (a Monday). This is a very brief

time period within which Plaintiffs' counsel would have to receive and then file consents mailed

on July 30. An interpretation of the "membership . . . close[s]" language that requires consents

to be filed by August 4 seems, for all practical purposes, virtually inconsistent with the language

that allows potential members to mail in and have postmarked their consents through July 30.

While Rule 6 of the Federal Rules of Civil Procedure is not strictly applicable, it offers

the Court some guidance. The rule recognizes an expected lapse in time between mailing and

receipt, adding three days to a period when a party needs to act within a specified time after

service and service is made by mail. Fed. R. Civ. P. 6(d). Similarly, it would be reasonable to

allow three days time between the date of mailing by potential members and receipt by

Plaintiffs' counsel. If three days are added to a postmark date of July 30, then counsel would be

expected to have received the consents on August 2, 2008, a Saturday. This would allow them

only two days, one of which was a Sunday, within which to process and file consents

5

postmarked July 30.  Again, this is an extremely abbreviated time period.  And again, Rule 6 offers some guidance.  When computing brief time periods under the rules or any local rule—less than eleven days—Saturdays and Sundays are excluded—and the last day, if a Saturday or Sunday also is excluded.  Fed. R. Civ. P. 6(a)(2), (3).  If the Court were to exclude the intermediate Saturday and Sunday, then Plaintiffs' counsel would have had to file the consents the same day they were received in the U.S. mail.

The meaning of the "membership . . . close[s]" language should be read in conjunction with the February 22 Order which allowed Plaintiffs' counsel 30 days in addition to the 120-day notice period within which to file consents.  The April 7 Order was prompted by Defendant's motion to reconsider the form and scope of notice.  While Lilly argued that the 120-day notice period was excessive, it does not appear to have argued that the additional 30 days for filing by Plaintiffs' counsel was excessive also.  And although the April 7 Order deems membership closed on August 4, nothing in that Order expressly addressed the deadline for Plaintiff's counsel to file the consent forms with the Court.  Reading these orders together, the additional time for filing was unaffected by the April 7 Order and counsel would still have had 30 days after the July 30 deadline, through August 29, to file consents.

This Court certainly recognizes the importance of a court-ordered deadline.  *See Stelor Prods., Inc. v. Oogles N Googles*, No. 1:05-CV-0354-DFH-TAB, 2008 WL 5062786 (S.D. Ind. Nov. 21, 2008).  However, "we should not become slaves of [a] deadline beyond its reason for existence."  *Monroe v. United Air Lines, Inc.*, 94 F.R.D. 304, 305 (C.D. Ill. 1982).  This Court also appreciates first-hand that this is a complicated case and allowing the filing of the consents at issue presents an unnecessary wrinkle in the case.  But that wrinkle can be smoothed over

6

without much effort by the parties or impact on the case.  Lilly argues that the filing of multiple untimely consents would require it to play "catch up"; but it has not explained how.  The parties are still engaged in discovery.  The Amended Case Management Plan, recently approved by the Court, sets June 19, 2009, as the deadline for discovery.  And, as noted in the original Case Management Plan, "[b]ecause all Pharmaceutical Reps share substantially the same job duties, statistical or other representative evidence can be used to determine whether Pharmaceutical Reps are exempt on a class basis."  (Case Civil Management Plan, 3/12/2007 at 4.)  Thus, the additional opt-ins may not significantly add any discovery burden on Lilly.  And no decision on Lilly's liability or damages has been made.  Furthermore, these opt-ins would account for less than one percent of all opt-ins in the case.  Thus, their inclusion could at most result in de minimis prejudice to Lilly, and Lilly has not shown how it would be prejudiced by allowing the filing of these consents.

The other three consents at issue in Plaintiffs' motion were not mailed before July 30.  But Beaudoin Clubine and Khan have offered explanations as to why they did not timely mail the forms.  Lilly complains that their excuses primarily attempt to address why they did not mail the consents in the final week before the July 30 deadline, and they do not attempt to excuse their failure to mail the consents before that time.  This may be true with respect to Clubine and Khan, but Beaudoin's circumstances may have spanned a greater time period.  Anyway, though it may have been wiser for potential class members to mail their consents before the final week before the July 30 deadline, nothing required them to do so.  Lilly does not directly challenge the reasons given—Beaudoin was in grief counseling due to the loss of his sister to cancer and beginning a new job; Clubine was out of the country between July 24 and August 1 and on his

return started a large, new project at work; and Khan was married July 19 and did not return from his European honeymoon until July 29. These are reasonably sufficient excuses for failing to meet the July 30 deadline. And again, Lilly has not shown any prejudice by the filing of these three consents.

When considering whether to allow potential members with untimely consents to join a FLSA case, courts have allowed late filings under circumstances even less extenuating than here. *See, e.g.*, *Abubakar v. County of Solano*, No. CIV. S-06-2268 LKK/EFB, 2008 WL 550117, at *1-2 (E.D. Cal. Feb. 27, 2008) (granting motion for leave to file additional consents of 23 persons where five of them had not yet filed consent forms and none had shown good cause, but because the possibility of a separate action was realistic, the interests of judicial economy and convenience to the parties would be served); *Raper v. State of Iowa*, 165 F.R.D. 89, 92 (S.D. Iowa 1996) (allowing seven officers to opt into class even after summary judgment ruling had determined state's liability but before damages had been determined because there was no prejudice to defendant, class was small, and judicial economy, convenience to the parties, and the interest in reducing litigation expense would be served).

Allowing the filing of the untimely consents in this case likewise promotes the interests of judicial economy, convenience to the parties, and reducing litigation expenses. *See generally Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact . . . ."). Striking the consents as untimely, thus leaving the potential members to bring individual suits, would not. *See Abubakar*, 2008 WL 550117, at *1-2; *Monroe*, 94 F.R.D. at 305.

This is particularly so because of the apparent overlap in issues and evidence, which would render consolidation of the individual suits with this action quite likely.  Moreover, allowing the consents to be filed comports with the instruction that the FLSA is to be read broadly in favor of those intended to be covered.  *See Reich*, 4 F.3d at 499; *Kelley*, 964 F.2d at 750.

For these reasons, Plaintiffs have shown good cause for allowing the filing of the six consents referenced in their motion.  The Court will exercise its discretion to allow those consents to be filed.

### B.      Ten Consents Filed August 5th and 6th

This brings the Court to the ten consent forms filed on August 5 and 6, 2008, which Lilly seeks to have stricken.  The above discussion (except for the excuses for untimely filing) applies as well to these ten consents.  Though Lilly is correct that the Plaintiffs did not seek leave to file these ten consents and made no effort to show good cause for belatedly filing them, Lilly's motion to strike these consents should be denied.  In short, at least nine of the ten were mailed and postmarked by July 30, 2008, thus meeting the deadline in the Court's April 7 Order.  This, coupled with the fact that the consents were filed within one or two days of August 4, establishes good cause for allowing the filings, even if untimely.  No prejudice to Lilly has been shown.

Though Plaintiffs offer no evidence of the postmark date on the Carla Anne Blakeman consent, Blakeman (of Bowie, Maryland) signed it on July 30, and Rust Consulting, Inc. of Minneapolis, Minnesota, hired by Plaintiffs' counsel to process notices and consents, received it on August 4.  The timing of Rust's receipt in Minnesota does not seem inconsistent with a mailing in Maryland on July 30.  In any event, Rust received all ten consents on Monday, August 4, and forwarded them to Plaintiffs' counsel, who received them the next day, August 5.

Counsel immediately filed nine of the consents that same day and filed the last the next day.

Counsel acted expeditiously and, at most, these consents were filed only one or two days late.

No good purpose would be served by striking these ten consents, and thus they, too, will be

allowed.

### C.      Consents Filed by David Rose

Finally, the Court turns to the most troubling consents—those filed by David Rose.  Rose

has filed twenty-three consents on behalf of potential members.  All save one were timely filed

even under Lilly's interpretation of the Court's orders.  So timeliness is not the primary concern.

What concerns the Court is that Rose seems to have filed these consents in disregard of various

procedural and local rules.  *See, e.g*., Fed. R. Civ. P. 11 ("Every . . . paper shall be signed by at

least one attorney of record in the attorney's name"); S.D. Ind. L.R. 83.7(a) ("Each attorney

representing a party, whether in person *or by filing any document*, must file a separate Notice of

Appearance for such party." (Emphasis added)); *id* at.5.11 ("The ECF log-in and password . . .

serve as a signature for purposes of the Federal Rules of Civil Procedure (including FED. R.

CIV. P. 11)).  Rose has not entered an appearance in this case; yet he purports to represent these

potential members by filing documents on their behalf.  This course of conduct is problematic.

Yet despite Rose's missteps, striking the consents he filed would be too draconian a

sanction as against the potential plaintiffs.  Furthermore, striking these consents would likely

result in a motion for leave to re-file, which likely would be granted, and that would be a

pointless exercise.  There is an important caveat, however.  The Rose consents give the Court no

assurance that the consenting parties had a basic understanding of what they were consenting to

or that they made an informed decision in consenting to join this case.  *See Piper v. RGIS*

*Inventory Specialists, Inc.*, No. C-07-00032 (JCS), 2007 WL 1690887, at *8 (N.D. Cal. June 11, 2007).  The Rose consents merely state that the individual was employed by Lilly between November 14, 2003, and February 22, 2008, as a sales representative and chooses to join this case as a party-plaintiff.  The consents lack much of the important information included in the Court-approved consents.  They do not indicate that the individual understands the nature of the lawsuit—seeking unpaid overtime wages allegedly owed; they do not designate the named Plaintiffs as representatives; and they do not indicate a decision to be represented by Plaintiffs' lead counsel.  Nor do the Rose consents reflect an understanding of the right to obtain separate legal advice and representation or waiver of any conflict arising from the attorneys' representation of collective action members.  Thus, they are deficient.  The solution is not to strike them, but to allow the potential plaintiffs to properly file Court-approved Consent to Join forms within thirty days.

Lilly expresses concern over how the Rose consents were obtained.  Assuming that each of these consent forms was filed on behalf of someone who is a "Covered Employee" as defined in the Court's February 22 Order, then, presumably, Plaintiffs' counsel or agent mailed them the Court-approved notice of this action.  This lessens some concern over what information was provided to these potential plaintiffs.  Lilly also objects to the fact that some of the consents were signed during the time the Court was deciding issues related to the proper notice and consent.  But "courts generally allow opt-in consents to be filed at any time."  *Piper*, 2007 WL 1690887, at *8.  It seems that Lilly complains not so much about the timing of the filing of these consents, but rather, about the fact that they may have been filed without the benefit of the Court-approved materials.  Requiring the potential plaintiffs to properly file Court-approved consent to join

forms in order to remain plaintiffs in this case should sufficiently address the concern over the information provided to obtain their prior consents.  However, seven of the twenty-three Rose consents already have been re-filed by Plaintiffs' counsel–on time and in the court-approved form.  [*See* Docket Nos. 125/196, 128/522, 129/234, 137/363, 140/315, 141/329, 142/370.] There would be no point in requiring the individuals for whom these consents were filed to file additional consents.

This leaves only Thomas Moorman's consent, which was not filed until October 3, 2008. While his consent was late and without any explanation, when all is said and done, it would appear that every other consent to which Lilly objects will be allowed.  Little would be accomplished by striking the sole remaining consent, and Lilly has not shown how it would be prejudiced by allowing this one belated consent.  Thus, it also will be allowed.

III.    **Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Leave to File Untimely Consent to Join Forms of Six Potential Opt-In Plaintiffs [Docket No. 566] is GRANTED, thus Donald Francis Beaudoin, Jr., Richard Thomas Clubine, Charles Farrauto, Zakir H. Khan, Carmen Consuelo Orguiola-Molinos, and Netetia K. Walker are joined as party plaintiffs in this action, and Defendant's Motion to Strike Certain Consents is DENIED.

It is further ORDERED that in order to remain a plaintiff in this case, each of the individuals on whose behalf Rose filed a consent to join form [*see* Docket Nos. 126-127, 130-136, 138-139, 467-468, 538, and 570], except the seven persons for whom Plaintiffs' counsel already filed a consent form [*see* Docket Nos. 125/196, 128/522, 129/234, 137/363, 140/315,

141/329, 142/370], must within **thirty days** of this date properly file a Court-approved Consent

to Join form [*see* Docket Nos. 120-121].

     Dated:  12/17/2008

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

13

Copies to:

Jonathan S. Abady
EMERY, CELLI, BRINCKERHOFF &
ABADY LLP
jabady@ecbalaw.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Michael R. DiChiara
JOSEPH & HERZFELD LLP
md@jhllp.com

Gabriel Adam Hawkins
COHEN & MALAD LLP
ghawkins@cohenandmalad.com

Ryan Michael Hurley
BAKER & DANIELS LLP
ryan.hurley@bakerd.com

James A. Jones
GILLESPIE, ROZEN, WATSKY &
JONES, P.C.
jaj@grwlawfirm.com

Charles Joseph
JOSEPH & HERZFELD LLP
charles@jhllp.com

Gregory N. Karasik
SPIRO MOSS BARNESS LLP
greg@spiromoss.com

Eric B. Kingsley
KINGSLEY & KINGLSEY APC
eric@kingsleykingsley.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

James A. O'Brien III
SEEGER WEISS LLP
jobrien@seegerweiss.com

Michael D. Palmer
JOSEPH & HERZFELD LLP
michael@jhllp.com

D. Lucetta Pope
BAKER & DANIELS-SOUTH BEND
lucetta.pope@bakerd.com

Elizabeth Saylor
EMERY CELLI BRINCKERHOFF &
ABADY LLP
esaylor@ecbalaw.com

Christopher A. Seeger
SEEGER WEISS LLP
One William Street
New York, NY 10004-2502

Ira Spiro
SPIRO MOSS BARNESS LLP
ira@spiromoss.com

Christopher Van De Kieft
SEEGER WEISS LLP
cvandekieft@seegerweiss.com

David S. Wagner
BAKER & DANIELS, LLP
david.wagner@bakerd.com

Stephen A. Weiss
SEEGER WEISS LLP
sweiss@seegerweiss.com